# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONELL D. LEE,**

      **Petitioner,**

**v.**                              **CIVIL ACTION NO. 2:15-CV-7**

**DAVID BALLARD, Warden,**
**MOUNT OLIVE CORRECTIONAL COMPLEX**

      **Respondent.**

## REPORT AND RECOMMENDATION
## 28 U.S.C. § 2254

On January 16, 2015, Donell Lee ("Petitioner"), by counsel, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (ECF No. 1). On that same date, Petitioner paid the $5.00 filing fee. (Docket No. 2). On February 17, 2015, Respondent was ordered to show cause as to why the petition should not be granted. (ECF No. 3).

Respondent filed a response to Petitioner's petition on March 17, 2015. (ECF No. 5). On that same day, Respondent also filed a Motion for Summary Judgment as well as a "Memorandum of Law in Support of Respondent's Motion for Summary Judgment." (ECF Nos. 6,7). Additionally, on March 23, 2015, Respondent filed a supplemental answer regarding his earlier response made on March 17, 2015. On April 13, 2015, Petitioner filed a response and Memorandum of Law in Opposition to Respondent's Motion for Summary Judgment. (ECF Nos. 12, 13).

This matter is now pending before the undersigned for a Report and Recommendation.

## I. PROCEDURAL HISTORY

**A.**      **STATE COURT PROCEEDING**

## 1. Marion County Circuit Court Conviction

On or about May 28, 2007, the Marion County Grand Jury charged Petitioner in a two-count Indictment. Count One charged Petitioner with committing the offense of Murder in the First Degree, by causing the death of Derrick Osborne with the use of a firearm, in violation of W. Va. Code §§ 61-2-1 and 61-2-2. Count II charged Petitioner with committing the offense of Conspiracy to Commit Murder in violation of W. Va. Code § 61-10-31. On August 28, 2009, following a jury trial, Petitioner was found guilty of both Count 1 and Count II. On May 28, 2009, Petitioner was sentenced to a term of life with the possibility of parole after fifteen (15) years for the first-degree murder conviction and an indeterminate term of one to five years for the conspiracy conviction, with both sentences running concurrently.

## 2. Direct Appeal to West Virginia Supreme Court of Appeals

Petitioner filed a motion to extend time to file a petition of appeal with the West Virginia Supreme Court of Appeals ("WVSCA") on January 14, 2010. On January 19, 2010, Petitioner filed a direct appeal with the WVSCA. He raised five (5) grounds:

(1) The jury verdicts were unsupported by substantial evidence to prove beyond a reasonable doubt that appellant committed murder in the first degree and conspiracy to commit murder;

(2) The prosecutor committed prosecutorial misconduct when he withheld exculpatory evidence from the defense and made improper comments regarding the evidence in both his opening statement and closing arguments;

(3) The prosecutor knew or had reason to know that Amy Weekly, Albert Sigley, and Carrie Short provided false testimony to the grand jury to obtain an indictment against appellant from her order in the first degree;

(4) The trial court erred in denying appellant's motion for

> directed verdict at the conclusion of the State's case-in-chief, on charges of murder in the first degree, and conspiracy to commit murder; and
>
> (5) The trial court erred in denying appellant's motion post verdict judgment of acquittal and motion for new trial.

(ECF No. 6-2 at 4-5). The WVSCA refused Petitioner's direct appeal on July 12, 2010. (Document No. 6-2 at 105).

### 3. *State Habeas Corpus*

Petitioner filed a Petition for Writ of Habeas Corpus Ad Subjicidendum Under West Virginia Code § 53-4A-1 on May 26, 2011. (Docket No. 1-1 at 9; Docket No. 6-1 at 36). Petitioner asserted eight (8) arguments:

> (1) Petitioner's due process rights were violated because the jury convicted [him] when insufficient evidence existed to prove his guilt beyond a reasonable doubt for murder in the first degree and conspiracy to commit murder;
>
> (2) Petitioner's due process rights were violated when [Marion County Prosecuting Attorney] Mr. Wilson, withheld exculpatory evidence from the defense;
>
> (3) Petitioner's due process rights were violated when Mr. Wilson made improper comments regarding the evidence in the case during his opening statement and closing argument;
>
> (4) Petitioner Lee's due process rights were violated when the AmyWeekly, Albert Sigley and Carrie Short provided false testimony to the grand jury to obtain an indictment against Petitioner Lee for murder in the first degree and conspiracy to commit murder;
>
> (5) Petitioner Lee's due process rights were violated when the Court denied his motion for directed verdict at the conclusion of the state's case-in-chief, on charges of murder in the first degree and conspiracy to commit murder, and in submitting instructions on said charges to the jury;

> (6) Petitioner Lee's due proceess rights were violated when the Court denied [his] Motion for Post Verdict Judgment of Acquittal and Motion for New Trial;"
>
> (7) Petitioner Lee argues that the cumulative effect of all errors and adverse trial court rulings rendered his absolute right to due process of law and fundamental fairness impotent
>
> (8) Petitioner Lee's due process rights were violated based on unfair pretrial publicity.

(ECF No. 6-2 at 120). On September 9, 2011, the circuit court denied Petitioner's habeas petition, finding that six of the eight issues raised had been previously and finally adjudicated by the July 12, 2010 refusal order. Additionally, the circuit court found that "Petitioner had not been prejudiced by media coverage of his trial and rendered meritless Petitioner's claim of cumulative error. ECF No. 6-1 at 31-54.

### 4. *Appeal to WVSCA of State Habeaus Corpus Denial*

Petitioner submitted a Petition for Appeal to the WVSCA on March 8, 2012. ECF No.6-1 at 3-24. Petitioner alleged:

> (1) The [habeas] court erroneously dismissed Petitioner's habeas corpus claims on grounds that issues contained in the petition have been fully and fairly litigated by the [WVSCA].
>
> (2) The [habeas] court failed to make specific findings of fact and conclusions of law regarding issues raised in Petitioner's writ [of] habeas corpus petition and violated Petitioner's constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article III § 10 and § 14 of the West Virginia Constitution.

Id. at 10, 13. On January 9, 2013, the WVSCA issued an opinion affirming and reversing in part.

ECF No. 6-1, pp. 27-28. In that opinion, the WVSCA stated "the circuit court erred in its determination that grounds raised in a petition for appeal that was refused under this Court's prior practice need not be addressed in an omnibus habeas corpus proceedings." Id. at 27. More specifically, the WVSCA held that the habeas court properly denied relief upon Petitioner's unfair publicity claim but found that the remaining grounds had not been properly adjudicated in Petitioner's direct appeal. Consequently, the WVSCA remanded the case to the circuit court "for the purposes of an evidentiary hearing and proper adjudication of all remaining claims." Id. at 27-28.

## 5.  *Petitioner's Omnibus Hearing*

An omnibus hearing was held on September 19, 2013.ECF No. 6-1 at 31. Petitioner was represented by his attorney. Id.. "During the hearing, the Court heard the arguments of counsel and received a binder of documents from the petitioner which was not offered, nor admitted into evidence. No other evidence or witnesses were presented to the Court for its consideration of Mr. Lee's habeas petition at the omnibus hearing." Id. at 38. On November 22, 2013, the Marion County Circuit Court ("circuit court") issued a "Final Order Denying Petition for Writ of Habeas Corpus." ECF No. 6-1 at 31-54. The circuit court found that:

(1) Sufficient evidence existed in which to support Petitioner's convictions.

(2) Evidence of Mr. Podolsky's inconsistent statements failed Brady[1] because such evidence was immaterial to the outcome

---

[1] The circuit court was referring to Brady v. Maryland, 373 U.S. 83 (1963). In order for a petitioner to prevail on a "Brady prosecutorial misconduct claim", it is not enough for the petitioner to say that favorable evidence was withheld. Banks v. Dretke, 540 U.S. 668, 691 (2004); U.S. v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010). Rather, "[t]he accused must prove (1) that the 'evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) that the 'evidence [was] suppressed by the [government], either willfully or inadvertently'; and (3) that the evidence was material to the defense, i.e., 'prejudice

5

of Petitioner's underlying trial.

(3) Petitioner's ground of improper prosecutorial comments was "ordinary trial error if it had, in fact, even been committed, . . . [and thus] improper for purposes of habeas review."

(4) The State was not aware of any false testimony and that "none of the witnesses [that Petitioner] complained of testified during Petitioner's trial." Additionally, "the binder" offered by Petitioner "was neither authenticated pursuant to Rule 901 of the West Virginia Rules of Evidence nor moved to be entered into evidence. . . . [N]o custodial testimony was presented during the omnibus hearing to establish that the binder of information was ever within the custody of the witnesses" Consequently, Petitioner failed to "present a complete chain of evidence of custodial possession, [and] also failed to produce even a single custodial witness."

(5) Petitioner based his claim of improper denial of his motion for directed verdict on "evidentiary rulings constituting ordinary trial error."

(6) "Petitioner. . . based his claim of the trial court's failure to grant his post-verdict motion for acquittal and motion for new trial upon evidentiary rulings constituting ordinary trial error."

(7) The court found "no legal or factual basis supportive of any of the alleged errors cited by [Petitioner] when reviewing for cumulative error.

(8) The court "recognized that it had previously and properly adjudicated Petitioner's remaining ground of unfair pretrial publicity, and that such claim had already been reviewed by the [WVSCA]."

Thus, the circuit court found that Petitioner was entitled to no relief and that his petition should be denied.

---

must have ensued.'" Id. (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also, Giglio v. United States, 405 U.S. 150, 154-155 (1972).

### 5. *Appeal to WVSCA of Circuit Court of Marion County Appeal Denial*

On December 20, 2013, Petitioner filed a Notice of Appeal and submitted an Appellate Transcript Request for the hearing conducted in the circuit court on September 19, 2013. ECF. No. 6-1 at 57-66. For relief, he sought a new trial on grounds that he was denied due process of law at trial. Id. at 63. On March 24, 2014, he furnished a brief rasing the following single Assignment of Error:

> (1) "The [habeas] court erroneously dismissed Petitioner's petition for writ of habeas corpus and violated Petitioner's constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article III, § 10 and § 14 of the West Virginia Constitution."

ECF No. 6-1 at 83. In the body of the brief, Petitioner alleged that the circuit court erred when it stated that "neither party elected to present any evidence or witnesses in support of their positions at the omnibus hearing." ECF No. 6-1 at 88. Petitioner noted the eight (8) ring binder. On September 19, 2014, the WVSCA issued a Memorandum Decision affirming the circuit court's Order. ECF No. 6-1 at 145-147.

### D. *Federal Habeaus Corpus*

In his § 2254, Petitioner requests that this Court: "[r]everse the judgments of the Supreme Court of Appeals of West Virginia and the Circuit Court of Marion County and grant [Petitioner] a new trial, and remand to the Circuit Court of Marion County for further proceedings." ECF No. 1 at 15. Petitioner lists seven (7) grounds for relief:

> (1) Insufficient evidence;
>
> (2) Failure of prosecutor to disclose exculpatory evidence;

> (3) Indictment procured through false testimony;
>
> (4) Improper denial of motion for directed verdict;
>
> (5) Improper denial of directed verdict;
>
> (6) Improper denial of post-verdict motion for acquittal and new trial;
>
> (7) Cumulative error

(ECF No. 1 at 5-11, 16). Regarding timeliness of petition, Petitioner asserts "there were intervening events that 'tolled' the applicable statute of limitations." (Id. at 13).

## II. STANDARD OF REVIEW

The United States Supreme Court recognizes the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also United States v. White, 366 F.3d 291, 300 (4th Cir. 2004): United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (citing Andiarena v. United States, 967 F.2d 715, 719 (1st Cir. 1992)). Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 405. A state court decision "involves an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Id. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. Id. at 411.

Additionally, "The Fourth Circuit Court of Appeals has determined that 'the phrase "adjudication on the merits" in section 2254(d) excludes only claims that were not raised in state court. Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 2000)." (Docket No. 7 at 12).

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> "[Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d

9

> 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."

Harrington v. Richter, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determinations of factual issues by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court <u>conducted an evidentiary hearing and explained its reasoning with some care</u>, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (emphasis added). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." Id. Accordingly, courts should not "casually cast aside a state court's factual findings. Id.

## IV. ANALYSIS

Respondent urges the Court to deny and summarily dismiss the petition because "Petitioner's claims are grossly without merit and Petitioner has been unable to assert even a scintilla of proof indicating that his claims warrant habeas relief." (Docket No. 5 at 3). Pursuant to Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011), federal habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court unless the state court determination:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable

10

> determination of the facts in light of the evidence present in the State court proceeding.

For the following reasons, the Court finds that the instant habeas petition must be denied.

### A. <u>Sufficient Evidence Exists Upon Which to Base Petitioner's Conviction</u>

Petitioner was charged with Murder in the First Degree and Conspiracy. (Docket No. 1 at 1). As stated in <u>In re Winship</u>, 397 U.S. 358, 364 (1970), it is "important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." Thus, pursuant to <u>In re Winship</u>, "the Due Process Clause protects the accused against conviction <u>except upon proof beyond a reasonable doubt</u> of every fact necessary to constitute the crime with which he is charged." (emphasis added).

Here, the State in Petitioner's underlying criminal trial had to prove every element of W. Va. Code § 61-2-1 (first degree murder), and § 61-10-31 (conspiracy). (Docket No. 7 at 14). The State provided adequate evidence to prove the elements of the charges. First, the circuit court declared in its Order denying Petitioner habeas relief:

> With respect to Mr. Lee's involvement in the murder, Mr. Podolsky [one of Petitioner's co–defendants] testified, *inter alia*, to the following: (1) that co-defendant Lafayette Jenkins and [Petitioner] had an altercation with the victim; (2) that Mr. Jenkins and [Petitioner] felt that the victim was a threat to them; (3) that Mr. Jenkins and [Petitioner] had explained their problem with the victim to Mr. Podolsky and Mr. Taylor [another co-defendant and the actual shooter]; (4) that [Petitioner] was present when Mr. Jenkins asked Mr. Taylor if he could "take out" the victim; (5) that [Petitioner] described what the victim looked like, what car he would be driving and pointed out the house where he could be located to Mr. Podolsky; (6) that [Petitioner] offered his gun for use in the murder; and (7) that [Petitioner] talked with Mr. Taylor, Mr. Jenkins and Mr. Podolsky about how the murder could take place.

(Id.). Additionally, the State introduced into evidence an audio recording between Petitioner and police officers. (Id.). In this recording, Petitioner "admitted in the course of conversations between Mr. Jenkins and Mr. Taylor about arranging the murder of [the victim], Petitioner described. . . what [the victim] looked like; . . . the car that [the victim] would be driving; and that, during a 'drive by' before the murder, Petitioner pointed out to Mr. Taylor where [the victim] lived and which door was the door to [his] residence." Id. Moreover, Petitioner admitted that he was the "only one who 100% knew where [the victim] lived." Id.. Petitioner: (1) was the only defendant who knew the location and identity of the victim, (2) offered his own firearm for the murder of the victim, and (3) strategized with other defendants regarding how the murder could take place. (Docket No. 7 at 14-15).

Consequently, because of the testimony of Petitioner's co-defendants and Petitioner's <u>own statements</u>, there is sufficient evidence upon which to base Petitioner's convictions for conspiracy and first degree murder beyond a reasonable doubt.

**B.**     **The Prosecutor Did Not Fail to Disclose Exculpatory Evidence**

Pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The WVSCA's application of <u>Brady</u> examines three (3) components:

(1)     "the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence;

(2)     the evidence must have been suppressed by the State, either wilfully or inadvertently; and

    (3)  the evidence must have been material, i.e., it must have prejudiced the defense at trial."

State v. Youngblood, 221 W. Va. 20, 29 (2007).

  Here, Petitioner claims that the Prosecutor "failed to disclose the fact that co-defendant S. Poldolsky provided untruthful statements which tend to exculpate Mr. Lee." (Docket No. 1 at 7). Petitioner alleges that the State withheld Podolsky's polygraph information. (Docket No. 7 at 15). Regarding component one (1), the circuit court determined in its habeas ruling that co-defendant Poldolsky's testimony was non-exculpatory evidence in regard to Petitioner's case, but possibly considered impeachment evidence for use against the State's case. (Id.). Regarding component two (2), the circuit court has already determined that Petitioner did not put forth evidence to suggest the State had willfully suppressed polygraph evidence. In fact, Petitioner did not produce any witnesses or evidence at all during the omnibus hearing on September 19, 2013 which could have supported his allegations. Regarding component three (3), Petitioner, "did not even mention to the [circuit] Court any specific statement made by Mr. Podolsky at [Petitioner's] trial that was alleged to have been untruthful or to have had a material effect in the jury's decision. (Id. at 16). Petitioner could not show that the absence of the polygraph information prejudiced him at trial. Consequently, Petitioner fails all three (3) components of Youngblood thus failing Brady.

**C.** **No Reliable Evidence Exists to Suggest That the Indictment was Procured Through False Testimony**

  The Fourth Circuit has stated regarding a Northern District of West Virginia appeal:

> "A court may exercise its supervisory power to dismiss an indictment because of misconduct before the grand jury if the misconduct "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by

Congress to ensure the integrity of the grand jury's functions."

United States v. Outlaw, 464 F. App'x 165, 167 (4th Cir. 20012) (citing United States v. Williams, 504 U.S. 36, 46 (1992)). Outlaw further held that "if a defendant establishes such a violation [as noted by Williams], dismissal of an indictment is only warranted if the violation resulted in prejudice to the defendant. See also Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988). Outlaw defines prejudice as being shown only if (1) "it is established that the violation substantially influenced the grand jury's decision to indict, or" (2) "if there is grave doubt that the decision to indict was free from the substantial influence of such violations." Outlaw 464 F. App'x at 167. Furthermore, "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment." Outlaw 464 F. App'x at 167 (citing Bank of Nova Scotia, 487 U.S. at 261) (emphasis added).

In this case, Petitioner alleges "[t]he prosecutor knew or had a reason to know that Ms. Weekley and Mr. Segley provided false [sic] testimony before Grand Jury." However, Petitioner did not provide evidence to support his allegation. While Petitioner did provide the circuit court with a binder allegedly containing three (3) grand jury witnesses who had initialed their allegedly false testimony, his counsel made no motion to have the documents in the binder admitted into evidence. ECF No. 6-1 at 49. Furthermore, no authentication was offered for the these documents pursuant to Rule 901 of the West Virginia Rules of Evidence. Proper authentication would have required testimony by qualified witnesses that the documents were in fact what Petitioner's counsel claimed them to be. Furthermore, although Petitioner's counsel stated that the documents in the binder were transferred between certain identified individuals, no custodial testimony was presented at the

14

omnibus hearing. Consequently, the habeas court was left with counsel's unsupported contention that grand jury witnesses were untruthful and unauthenticated fugitive documents which could not be considered. Id. at 49.

Pursuant to Outlaw, Petitioner (1) did not provide evidence to show that there was a violation which led to defective indictment, (2) did not prove that any violation influenced the Grand Jury's decision to indict, and (3) did not show any evidence to suggest the decision to indict was burdened by substantial influence of any violations. Thus, there is no evidence that the indictment was procured though false testimony.

**D.     The Trial Court Did Not Improperly Deny Petitioner's Motion for Directed Verdict or Post-Verdict Motion for Acquittal and New Trial**

Federal Rule of Civil Procedure 50(a) provides for the motion for directed verdict. It states in relevant part:

> "(1) **In General**. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

Fed. R. Civ. P. 50(a) (emphasis added).

Here, Petitioner asserts that the case against him was "wholly circumstantial" and that there was "no evidence adduced at trial to remotely suggest that [Petitioner] murdered the decedent or was a part of a conspiracy to murder the decedent." (Docket No. 1 at 10). However, as noted previously,

15

there is sufficient evidence on which to base Petitioner's conviction.[2] Additionally, the circuit court properly found that Petitioner's complained-of error did not amount to an error of constitutional dimension.[3] (Docket No. 7 at 18). Furthermore, Petitioner has not provided any additional evidence to support either his Motion for Directed Verdict or Post-Verdict Motion for Acquittal and New Trial. (Id.). Pursuant to Fed. R. Civ. P. 50(a), Petitioner provided no evidence to suggest that a reasonable jury would have a legally sufficient evidentiary basis to find for him. Thus, the circuit court acted properly in denying Petitioner's his Motion for Directed Verdict and Post-Verdict Motion for Acquittal and New Trial.

**F.**     **Cumulative Error Does Not Exist Upon Which to Reserve Petitioner's Conviction**

In regard to cumulative error, Higgs v. united States, 711 F. Supp. 2d 479 (4th Cir. 2010) (citing Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998)) stated:

> "Having just determined that none of counsel's actions could be considered constitutional error … it would be odd … to conclude that those same actions, when considered collectively, deprived [the defendant] of a fair trial"

Additionally, Higgs referenced Greene v. Hoke , No. 2009 WL 774491, at *6 (S.D. W. Va. 2009) "confirming magistrate judge's finding that cumulative error cannot be found where there are 'no error[s] of federal law, constitutional or otherwise.'"

Here, Petitioner does not provide evidence proving that he has suffered either (1) a constitutional error or (2) an error in federal law. Petitioner has had multiple opportunities to show

---

[2] As explained previously, there is testimony from a co-defendant as well as personal statements made by Petitioner which incriminate him.

[3] Petitioner's due process was not violated.

that he has suffered either error. However, Petitioner did not provide any evidence or witness testimony to show he suffered from constitutional violations during his omnibus hearing. (Docket No. 7 at 18). Petitioner has failed to demonstrate that he has been deprived of a fair trial by any cumulative effects because no alleged errors have been proven to have merit. Thus, in accordance to Greene and Angelone, Petitioner does not show cumulative error.

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that Petitioner's §2254 petition be **DENIED and DISMISSED WITH PREJUDICE**, and Respondent's Motion for Summary Judgment [ECF No. 6]be **GRANTED**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record via electronic means.

Dated: September 29, 2015

/s/*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE